**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Phillip Mitchell,
Petitioner
-vs-
State of Arizona, *et al.*,
Respondents.

CV-15-2229-PHX-JAT (JFM)

**Report & Recommendation**
**on Petition for**
**Writ of Habeas Corpus and**
**Motion to Stay/Motion to Amend**

## I.    MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 7, 2016 (Doc. 5).  On April 22, 2016 Respondents filed their Limited Answer (Doc.  13).   Petitioner filed an amended Motion to Stay/Motion to Amend on July 25, 2016 (Doc. 20), and lodged a proposed Second Amended Petition (Doc. 21), to which Respondents responded (Doc. 25), and Petitioner has replied (Doc. 26).  On October 25, 2016, Petitioner filed his Reply (Doc 28) in support of his Petition.

The Petitioner's Petition, and Motion to Stay/Motion to Amend are now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.    FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals

summarized the factual background as follows, albeit construing the evidence in the light most favorable to sustaining the conviction:

> Mitchell's step-daughter; G, was born on June 23, 88. G testified that Mitchell sexually abused her on four separate occasions [with multiple acts on each occasion].First, Mitchell made oral and penile contact with G's vagina when she was eleven or twelve years old and while her mother ("Mother") was attending a concert. Second, Mitchell pulled down G's pants and touched the outside of her vagina. with his finger when Mother left the house to pay bills. Third, Mitchell touched G's breasts, had oral contact with her, and used his penis to touch her vagina when G was in the sixth grade and while her grandmother was visiting. Fourth, Mitchell pulled G's pants down and had oral contact with her vagina while touching her breasts when G was in seventh grade. G could not recall, however, whether Mitchell tried forcing her to touch his penis.
>
> Mother testified that after Mitchell moved out of the marital residence on March 18, 2004, G told her about the sexual abuse. Thereafter, Mother took G to Childhelp Children's Center at St. Joseph's Hospital for a medical examination. Dr. Q, a pediatrician for Childhelp Children's Center, examined G at the age of fifteen years and nine months. The medical examination documented that there was evidence showing G's hymen had been previously torn and had since healed. Dr. Q testified that the cleft found on G's hymen was inconsistent with a congenital condition, and that such injuries are only found after some type of penetrating trauma occurs.
>
> On April 9, 2004, Detective M, an officer with the Phoenix Police Department, interviewed G. Through Detective M's summary of G's statements, the prosecution offered impeachment evidence to establish three instances of penetration. Additionally, impeachment evidence was offered that Mitchell attempted to force G to touch his penis. The superior court acknowledged that this impeachment testimony constituted substantive evidence.
>
> On July 13, 2005, Detective M interviewed Mitchell at the police station. Mitchell acknowledged understanding his Miranda rights and answered Detective M's questions. At trial, the State introduced recorded video of the interview into evidence. In the video, Mitchell admitted that he touched G's vagina with his hand and mouth.

(Exhibit S, Mem. Dec. 8/27/09 at 4-5.) (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit ___." Exhibits to the Reply, Doc. 28 are referenced herein as Exhibit R-___.")

## B.   PROCEEDINGS AT TRIAL

**Indictments** - On July 25, 2005, Petitioner was indicted in Maricopa County Superior Court in Case CR2005-121408, on nine counts of molestation.  (Exhibit EE,

Orig. Indictment.)   Petitioner was tendered a plea offer, and appeared for a settlement conference on September 26, 2006, but Petitioner rejected the plea offer.  (Exhibit FF, M.E. 9/26/06.)

On October 11, 2006, Petitioner was again indicted in Maricopa County Superior Court in Case CR2006-009621, on eight counts of molestation (counts 1, 4, 5, 8, 9, 12, 13, and 14), three counts of sexual abuse (counts 2, 7, 11), one count of attempted molestation (count 3), two counts of sexual conduct (Counts 6 and 10), and one count of indecent exposure (count 15).  (Exhibit A, Indictment.)

The prosecution filed a Motion to Dismiss (Exhibit GG) the 2005 Indictment on the basis of the 2006 Indictment.  The motion was granted.  (Exhibit HH, M.E. 1024/06.)

The prosecution eventually moved to dismiss two of the molestation charges (counts 13 and 14), the indecent exposure charge (count 15), and one of the sexual conduct charges (count 9) was amended to allege molestation with consent.  (Exhibit S, Mem. Dec. 8/27/09 at 5.)

**Trial** – Petitioner eventually proceeded to trial on October 29, 2007 on the remaining twelve counts. (Exhibit I, R.T. 10/29/07.)   A motion for acquittal was granted as to one count of attempted molestation (count 3).  (Exhibit S, Mem. Dec. 8/27/09 at ¶10.)  After amendments to the indictment to conform to the evidence as to dates and typographical errors, the remaining eleven counts were submitted to the jury.  (*Id.* at ¶ 11.) Petitioner was convicted on seven of those charges: four of the molestation charges (counts 1, 4, 8 and 12), one count of sexual abuse (count 11), and two counts of sexual conduct (counts 6 and 10). (*Id.* at ¶ 12)  Movant was acquitted on four of the charges: two counts of sexual abuse (counts 2 and 7), one count of attempted molestation (count 9), and one count of molestation (count 5).  (Exhibit N, R.T. 11/07/07 at 80-82.)

**Sentencing** – Petitioner appeared for sentencing on December 11, 2007.  (Exhibit O, R.T. 12/11/07.)   Petitioner was sentenced to consecutive life terms on the sexual conduct charges (counts 6 and 10), presumptive terms of 17 years for the molestation convictions (counts 1, 4, 8, and 12), and the presumptive term of 5 years for the sexual

abuse conviction (count 11). The terms for years were imposed concurrently with each other but consecutively to the life terms on the sexual conduct charges.  (Exhibit S, Mem. Dec. 8/27/09 at ¶ 12.)

## C.    PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, but appointed counsel was unable to find an issue for appeal, and filed a brief (Exhibit Q) pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related state authorities. Petitioner filed a Supplemental Brief (Exhibit R) in which he argued: (1) his confession was unconstitutionally obtained in violation of *Miranda*; (2) his confession was involuntary; (3) insufficient evidence; (4) invalid determination of probable cause; (5) defective indictment; (6) prosecutorial misconduct; and (7) ineffective assistance of counsel.

On August 27, 2009, the Arizona Court of Appeals affirmed Petitioner's convictions.  (Exhibit S, Mem. Dec. 8/27/09.)

Petitioner then sought review by the Arizona Supreme Court (Exhibit T), which denied review on February 17, 2010.  (Exhibit U, Order.)

On April 1, 2010, the Arizona Court of Appeals issued its Mandate (Exhibit S).

## D.    PROCEEDINGS ON POST-CONVICTION RELIEF

On March 12, 2010, Petitioner filed *pro se* a Notice of Post-Conviction Relief, which was dated March 8, 2010 (Exhibit V).  Counsel was appointed, who filed a Petition (Exhibit W) arguing that the trial court erred in granting the amendments to the indictment to conform to the evidence, and that counsel was ineffective for failing to object to the amendment, and for failing to move to remand to the grand jury.  The PCR court denied the petition, concluding: (1) the amendment issue was decided on direct appeal, and was precluded; and (2) counsel was not deficient in failing to oppose the amendment or to move to remand.  (Exhibit Y, M.E. 8/6/12.)

Petitioner then filed through counsel a Petition for Review (Exhibit Z) raising the

4

same arguments.  On June 23, 2014, the Arizona Court of Appeals granted review, but denied relief, finding the trial court's conclusions correct.  (Exhibit BB, Mem. Dec. 6/23/14.)

Petitioner sought review from the Arizona Supreme Court, which denied review on November 4, 2014.

## E.   PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing *pro se* his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 5, 2015 (Doc. 1).  That petition contains a certification that it was placed in the prison mail system on November 4, 2015 (*id.* at 15 ("16")).  The original petition contained claims of: (1) a defective indictment as a result of improperly impaneled grand jury; (2) a due process violation from use of the victim's delayed medical examination; (3) prosecutorial misconduct from use of the medical examination, and threats to press more serious charges if the plea offer was rejected; and (4) ineffective assistance of counsel as a result of failure to review the case and raise issues in the petition.

On December 9, 2015, the Court dismissed that original Petition for failure to name a proper respondent.  The dismissal was with leave to amend.  (Order 12/9/15, Doc. 4)

On January 7, 2016, Petitioner filed his Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5).  The Amended Petition asserts the following five grounds for relief:

> In Ground One, he alleges that the indictment was defective. In Ground Two, he alleges that "medical examinations" were improperly used to secure his indictment. In Ground Three, he alleges that the prosecutor engaged in misconduct. In Ground Four, he alleges that his attorney provided ineffective assistance. And in Ground Five, he alleges that the probable cause determination was invalid.

(Order 1/25/16, Doc. 6 a 1-2.)    Petitioner's Ground 3 consists of two subparts: (a) misconduct from use of medical exams; and (b) misconduct from threats of more serious

charges.

**Response** - On April 22, 2016 Respondents filed their Response ("Answer") (Doc. 13).  Respondents argue: (a) Ground 5 was not raised in the original Petition and is barred by the habeas statute of limitations; (b) Grounds 1 and 2 are not cognizable federal claims; (c) Ground 1, 2, 3a, and 4 are procedurally defaulted; (d) Ground 3b is without merit; and (e) Ground 4 is conclusory and without merit.

**Motion to Stay** – On May 11, 2016, Petitioner filed a Motion to Dismiss (Doc. 14) the Petition.  The Court cautioned Petitioner about the habeas statute of limitations and procedural bars, and provided Petitioner an opportunity to withdraw his motion.  (Order 6/7/16, Doc. 15.)  Petitioner then filed a Motion to Withdraw (Doc. 16) the dismissal motion, which was granted (Order 6/24/16, Doc. 17), coupled with a Motion to Stay (Doc. 16).  He subsequently supplemented the motion to stay (Doc. 18.)  However, the motion was stricken for failure to comply with the Court's orders.  (*See* Order 7/11/16, Doc. 19.)

On July 25, 2016, Petitioner filed a second Motion to Stay in Abeyance (Doc. 20) and lodged a proposed Second Amended Petition (Doc. 21).  In his Motion, Petitioner seeks to delete Ground 5 (Probable Cause), and hold the remainder of his Petition in abeyance pending exhaustion of state remedies on that claim. However, Petitioner's proposed Second Amended Petition includes only a new claim of ineffective assistance of trial, appellate, and post-conviction relief counsel.

Respondents oppose (Doc. 25) the request to amend, arguing that the proposed amendment is: (a) futile because barred by the statute of limitations and procedurally defaulted; (b) unduly delayed; and (c) unduly prejudicial in light of the interests in finality and enforcement of Petitioner's sentence.  Respondents further argue that permitting the amendment would be prejudicial to Petitioner in light of his removal of all but one claim from his proposed amended petition.

Respondents further argue that Petitioner fails to meet the requirements for a stay of a mixed petition established in *Rhines v. Weber*, 544 U.S. 269 (2005).  In particular,

Respondents argue that Petitioner has failed to establish: (a) good cause for his failure to previously exhaust his state remedies; and (b) that the unexhausted claim is potentially meritorious, as opposed to being merely conclusory.  Alternatively, Respondents argue that rather than being a mixed petition, all of the claims in his current petition are either properly exhausted or procedurally defaulted.

Petitioner has replied (Doc. 26), arguing: (a) that PCR counsel wrongly advised Petitioner to seek review in both the Arizona Court of Appeals and the Arizona Supreme Court, rather than the federal courts; (b) his claims have all been presented to the Arizona appellate courts; (c) his claims were timely; and (d) as a *pro se* Petitioner, his filings should be liberally construed.

**Reply** – On October 5, 2016, the Court observed that that the resolution of the Motion to Stay/Motion to Amend appeared to be intertwined with addressing the procedural defenses raised by Respondents in their Limited Answer, e.g. the statute of limitations, procedural default, etc.  (Order 10/5/16, Doc. 27.)  Consequently, a deadline for a reply on the existing Petition was set.

On October 25, 2016, Petitioner filed his Reply (Doc. 28).  Petitioner argues that: (a) Ground 1, 2 and 3 were presented to the Arizona Court of Appeals on direct review; (b) Ground 1 through 4 are timely, and Petitioner has sought to delete his untimely Ground 5; and (c) Ground 1 through 4 are meritorious.

### III.    APPLICATION OF LAW TO FACTS
**A.    MOTION TO STAY/MOTION TO AMEND**

Purportedly to avoid a dismissal for failure to exhaust state remedies, Petitioner seeks leave to amend and a stay of his amended petition.

**1.    Motion to Amend**

**Nature of the Requested Amendment** - In his Motion to Amend (Doc. 20), Petitioner argues that he is attempting to delete his current Ground 5 on the basis that his

state remedies on the claim are unexhausted.  However, Petitioner's proposed Second Amended Petition (Doc. 21) deletes all of Petitioner's claims, and asserts a new claim of ineffective assistance of counsel.

"It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent. [ ] Once amended, the original no longer performs any function as a pleading[.]" *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1180 (C.D.Cal. 1998) (quoting *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir.1956), overruled on other grounds by *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (internal citations omitted)).  It does not appear that Petitioner's intent is to abandon all of his claims, with the exception of that stated in his proposed Second Amended Petition. Accordingly, the Court will liberally construe Petitioner's filings to request leave to amend to retain his existing Grounds 1 through 4, to delete his existing Ground 5 (invalid determination of probable cause) (as he urges in his Motion), and to add a new Ground 5 asserting additional claims of ineffective assistance of counsel.

Nonetheless, whether the Court relies on Petitioner's stated objective in his Motion, or looks to the lodged proposed amended petition, the proposed amendments are futile and must be denied.

**Standards for Amendment** - Applications for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."   28 U.S.C. § 2242.  Similarly, Rule 11 of the Rules Governing Section 2254 Cases provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to the petitions filed under these rules."

"In assessing the propriety of a motion for leave to amend, we consider five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint. Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

**Timeliness** – Respondents argue that any new claim is untimely, and thus futile.

As discussed hereinafter, Petitioner's original Petition (Doc. 1) was filed shortly before his one year habeas limitations period expired. As discussed hereinafter, however, an amended petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The original and amended claims must, instead, be "tied to a common core of operative facts." *Id*. at 664.

The new Ground 5 Petitioner asserts in his lodged, proposed Second Amended Petition (Doc. 21) is that his trial, appellate and post-conviction relief counsel were ineffective.

To the extent that Petitioner intends to assert new instances of deficient performance, those claims would be barred by the habeas statute of limitations.

To the extent that Petitioner simply seeks to add facts to support his original claims of ineffective assistance in Ground 4, those new facts must be related to the same claim, that is arising from the same common core of operative facts. The operative facts alleged in Ground 4 were that "pre and post trial" counsel failed to raise claims urged by Petitioner. Petitioner's new claim is that "pre and post trial" counsel failed to raise claims urged by Petitioner, but Petitioner now appends correspondence in which he purports to detail the claims that should have been raised.

It is true that Petitioner previously asserted ineffective assistance as a type of claim. But ineffective assistance claims are not fungible. So, in the context of establishing exhaustion of such claims, the Ninth Circuit has held that each must be specifically argued. *See Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982) (presentation of "additional facts of attorney incompetence" transformed claim into one not presented to state court); and *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (rejecting argument that presentation of any claim of ineffectiveness results in fair presentation of all claims of ineffective assistance). The Ninth Circuit has applied the same rationale in the context of relation back of amendments to avoid the statute of

limitations.   For example, in *Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012), the court found no common core of operative facts between an original claim of ineffectiveness based on failure to pursue mental competency testing, and an amended claim of ineffectiveness based on a voluntary intoxication defense.

Here, Petitioner's original claim in his original Petition and Amended Petition was conclusory, and failed to allege any specific instances of defective performance by his counsel.  The additional allegations that he now attempts to add are core to his claim. Because they are newly asserted, they were not in common with his original Ground 4. Consequently, the new claims do not relate back to the original petition, and as discussed hereinafter, are barred by the habeas statute of limitations.

Therefore, in so far as it seeks to add a claim, Petitioner's proposed amendment is futile.

To the extent that Petitioner's proposed amendment simply seeks to delete his original Ground 5 (probable cause) so he can pursue exhaustion of his state remedies, his amendment is also futile.  Petitioner's goal is to be able to exhaust his state remedies on the claim and then re-urge it in this Court.   However, Petitioner fails to refute Respondents' showing that the claim is not merely unexhausted, but procedurally defaulted by Petitioner's waiver of the claim in his first PCR proceeding.  Thus, deleting the claim will not achieve Petitioner's goal of avoiding a dismissal for failure to properly exhaust.

Moreover, as discussed hereinafter, Petitioner's Ground 5 (probable cause) is untimely.  Accordingly, reasserting it after a stay of these proceedings would be futile.

## 2.   Motion to Stay

Petitioner's second Motion to Stay in Abeyance (Doc. 20) seeks a stay to permit him to exhaust his state remedies on his existing Ground 5 (probable cause), which he proposes to delete.

Respondents argue that Petitioner fails to meet the requirements for a stay of a

mixed petition established in *Rhines v. Weber*, 544 U.S. 269 (2005). In particular, Respondents argue that Petitioner has failed to establish: (a) good cause for his failure to previously exhaust his state remedies; and (b) that the unexhausted claims are potentially meritorious, as opposed to being merely conclusory. Alternatively, Respondents argue that rather than being a mixed petition, all of the claims in his current petition are either properly exhausted or procedurally defaulted.

Petitioner has replied (Doc. 26), arguing: (a) his good cause for failing to properly exhaust is that PCR counsel wrongly advised Petitioner to seek review in both the Arizona Court of Appeals and the Arizona Supreme Court, rather than the federal courts; (b) his claims have all been presented to the Arizona appellate courts; (c) his claims were timely; and (d) as a *pro se* Petitioner, his filings should be liberally construed.

For the reasons discussed hereinafter, the undersigned concludes that Ground 5 (probable cause) is not unexhausted, but is procedurally defaulted and therefore a stay to permit exhaustion is not warranted.

**B.    TIMELINESS**
**1.    One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2.    Commencement of Limitations Period**

**a)    Conviction Final**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the

expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

Here, Petitioner's direct appeal remained pending through February 17, 2010, when the Arizona Supreme Court denied his Petition for Review.  (Exhibit U, Order 2/17/10.)

It is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999).  The rules of the Supreme Court of the United States, requires that a petition for a writ of certiorari be filed "within 90 days after entry of the order denying discretionary review." U.S.S.Ct. R. 13(1). Here, Petitioner did not file a petition for a writ of certiorari.  (Amend. Pet., Doc. 5 at 3.) Therefore, his conviction became final on May 18, 2010, 90 days after the Arizona Supreme Court denied review.

Therefore, Petitioner's one year began running on May 19, 2010, and without any tolling expired on May 18, 2011.

### 3.    <u>Timeliness Without Tolling</u>

Petitioner's original Petition (Doc. 1) was filed on November 5, 2015.

However, the Petition is dated November 4, 2015.  "In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."  *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). Apart from the date of the Petition, Petitioner proffers nothing to suggest that his Petition was delivered to prison officials for mailing, or that it was delivered prior to its filing date.  Because it would be reasonable to assume that Petitioner did deliver his petition to prison officials for mailing, and to assume that it

---

[1]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Petitioner proffers no argument that any of these apply.

was done prior to the filing date, and because it does not affect the outcome, the undersigned presumes (in Petitioner's favor) that his Petition was delivered to prison officials for mailing on the date it was signed, and that it should be deemed "filed" as of that date.

As determined in subsection (1) above, without any tolling Petitioner's one year habeas limitations period expired no later than May 18, 2011, making his November 4, 2015 original Petition over four years delinquent.

## 4.   **Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

**Properly Filed** - Statutory tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). On the other hand, the fact that the application may contain procedurally barred claims does not mean it is not "properly filed." "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

Even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period. *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002). If the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication wehther it has deemed the application timely or untimely, the federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to

13

timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

**Mailbox Rule** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies.  Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing.   In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court." *Id.* at 1091.

*Id*. at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely.  Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings.  *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).

**Application to Petitioner** - Petitioner's limitations period commenced running on May 19, 2011.  Petitioner's PCR proceeding was commenced on March 12, 2010, before his limitations period began running.  It remained pending until November 4, 2014, when the Arizona Supreme Court dismissed the Petitioner's Petition for review.  (Exhibit DD, Order 11/4/14.)  Thus, Petitioner's habeas limitations period was tolled from its commencement through November 4, 2014.  It commenced running again on 5, 2014, and expired one year later on November 4, 2015.

Thus, Petitioner's original habeas Petition (Doc. 1) was filed on the last possible day, and is timely.

However, Petitioner's Amended Petition (Doc. 5) was filed on January 7, 2016.

14

Petitioner certifies in his Petition that he deposited the Amended Petition in the prison mail system for filing on January 6, 2016.  Accordingly, the prison mailbox rule applies, and the Amended Petition must be deemed filed as of that date.  However, at that time, the habeas limitations period had been expired for two months.  The pendency of a federal habeas proceeding does not statutorily toll the running of the statute.  Accordingly, Petitioner's Amended Petition is untimely.

**5.    Relation Back**

.     Rule 15(c), Federal Rules of Civil Procedure provides that an "amendment of a pleading relates back to the date of the original pleading when . . .  (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  "The central policy of Rule 15(c)--ensuring that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment" is satisfied where the claims in the amended petition were included in the original petition. Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000).  However, an amended petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  The original and amended claims must, instead, be "tied to a common core of operative facts." *Id*. at 664.

Respondents concede that Ground 1 through 4 of the Amended Petition are the same as those asserted in the original Petition.  (Answer, Doc. 13 at 10.)   The undersigned finds that they are the same, and therefore relate back to the filing of the original Petition (Doc. 1), and are timely.  However, Ground 5 was not asserted in the original Petition.  Therefore Ground 5 must be deemed filed as January 6, 2016, and is untimely.

**6.**   **Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"   *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling, apart from Petitioner's lack of training.  (Reply, Doc. 28 at 2.)  However, "it is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,*  465 F.3d 964, 970 (9th Cir. 2006).  A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).   *See also Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").  "Ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v.*

16

*Johnson*, 174 F.3d 710, 714 (5th Cir.1999).

## 7.    Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence."  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).   To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of new evidence of actual innocence in this proceeding.

## 8.    Summary re Statute of Limitations

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on November 5, 2014, and expired on November 4, 2015.  Because his Ground 1 through 4 were raised in his original Petition, which is deemed filed as of November 4, 2015, they relate back to the original Petition, and are timely.  Ground 5, however, is not timely and must be dismissed with prejudice.  Further, any new claims asserted in an amended petition would be untimely.

## C.    EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR

Respondents argue that most of Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

**1.**     <u>**Exhaustion Requirement**</u>

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts. "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

<u>**Proper Forum**</u> - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

<u>**Proper Vehicle**</u> - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

<u>**Factual Basis**</u> – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim. A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative

18

facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Proper Mode** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that

does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).   *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

## 2.   **Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P. 32.4.  (Answer, Doc. 13 at 16-17.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was

"[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding."
Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by waiver, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that

petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time passed long ago.

<u>Exceptions</u> - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a

claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3.   **Procedural Bar on Independent and Adequate State Grounds**

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**Waiver Bar** - Petitioner fails to proffer anything to suggest that Arizona's waiver

23

bar, Rule 32.2(a)(3), is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal or a prior PCR proceeding.  The federal courts have routinely held that it is. "Arizona's waiver rules are independent and adequate bases for denying relief."  *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.) *cert. denied*, 135 S. Ct. 710 (2014).  *See also Stewart v. Smith*, 536 U.S. 856, 861 (2002) (Arizona's waiver rule is independent of federal law); and *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (adequate because consistently and regularly applied).

**Timeliness Bar** – Similarly, Petitioner fails to proffer anything to suggest that Rule 32.4 is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal.  The district courts in Arizona have held that it is.  *See e.g. Morgal v. Ryan*, 2013 WL 655122, at *16 (D. Ariz. Jan. 18, 2013) *report and recommendation adopted*, 2013 WL 645960 (D. Ariz. Feb. 21, 2013).

**4.** **Application to Petitioner's Claims**

**a)** **Ground One – Defective Indictment**

In Ground One of his Amended Petition, Petitioner argues that: (a) his grand jury was impaneled in violation of the Arizona Constitution; and (b) his indictment was secured by use of a medical examination report of the victim, secured three to five years after the alleged crimes.

Respondents argue that Petitioner raised the factual basis of this claim to the Arizona Court of Appeals on direct appeal, but failed to assert it as a federal claim.  Thus they argue it was not fairly presented, and Petitioner's state remedies on the claim are now procedurally defaulted.  (Answer, Doc. 13 at 18-19.)

Petitioner simply replies that he presented the claim on direct appeal.  (Reply, Doc. 28 at 2.)

On direct appeal, Petitioner's counsel filed an *Anders* brief, and did not assert any

24

claims.   In his Supplemental Brief, Petitioner argued that indictment was defective because the grand jury was selected by zip code zones, rather than the county at large, in violation of state statutes and the Arizona constitution. Respondents argue Petitioner never argued "that he trial court violated his rights under the United States Constitution." (Answer, Doc. 13 at 18-19.)  However, Petitioner concluded his argument regarding the indictment by adding "And the constitution of the United States, amendments 4, 5, 6, 8, 14, and my right to speedy trial and due process."  (Exhibit R, Supp. Brief at 6.)

Thus, Petitioner not only argued the facts underlying Ground 1(a), but cited various constitutional provisions.  However, he made no effort to correlate his string citations to the substance of his claim or to identify the specific federal claim made.  It is important to note, that the U.S. Constitution does not mandate an indictment. "Indictment by grand jury is not part of the due process guarantees of the Fourteenth Amendment that apply to state criminal defendants." *Jeffries v. Blodgett*, 5 F.3d 1180, 1188 (9th Cir. 1993). Thus, mere reference to the insufficiency of the indictment would not fairly apprise the state court of the nature of Petitioner's federal claim.

Moreover, a "shotgun" listing of federal constitutional provisions is insufficient. "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

Petitioner did reference his speedy trial rights and due process.   However, Petitioner does not now assert a speedy trial claim.  His unadorned reference to "due process" was also insufficient.   "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996).  *See also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

For the reasons discussed hereinabove, if deemed not fairly presented on direct appeal, Petitioner's claim in ground 1(a) is now procedurally defaulted.

Moreover, the Arizona Court of Appeals disposed of Petitioner's challenge to the

composition of the grand jury by reference to Ariz. R. Crim. Proc. 12.9, which provides in subpart (b) a deadline for challenges to the grand jury.  The Arizona Court of Appeals found that "the superior court granted Mitchell's request for an extension of time to challenge the grand jury proceedings under Ariz. R. Crim. P. 12.9; however, the record indicates Mitchell never filed such a motion."  (Exhibit S, Mem. Dec. 8/27/09 at 9.)

> Rule 12.9(b) provides that a motion to dismiss under that rule must be filed "no later than 25 days after the certified transcript and minutes of the grand jury proceedings have been filed or 25 days after the arraignment is held, whichever is later." "A defendant waives his objections to the grand jury proceeding by failing to comply with the timeliness requirement." *State v. Smith*, 123 Ariz. 243, 248, 599 P.2d 199, 204 (1979); *see also State v. Lamb*, 142 Ariz. 463, 468, 690 P.2d 764, 769 (1984) (defendant "waived his right to challenge the determination of probable cause by failing to act in a timely matter").

*State v. Merolle*, 227 Ariz. 51, 53, ¶ 10, 251 P.3d 430, 432 (App. 2011), *as amended* (June 1, 2011).    Here, Petitioner did not raise his challenge to the grand jury composition until appeal.  "In the instant case, the defendant did not challenge the determination of probable cause until the instant appeal. He waived his right to challenge the determination of probable cause by failing to act in a timely manner." *State v. Lamb*, 142 Ariz. 463, 468, 690 P.2d 764, 769 (1984).  Petitioner makes no contention that Rule 12.9 is not independent and adequate.

Moreover, the fact that the Arizona Court of Appeals cited other bases for disposition of Petitioner's composition claim, including his failure to support the merits of the claim on the record, is irrelevant.  The state court may reach "the merits of a federal claim in an alternative holding" and still avoid habeas review, "as long as the state court explicitly invokes a state procedural bar rule." *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989).

Accordingly, if Petitioner's claim in Ground 1(a) were deemed fairly presented by his arguments on direct appeal, his claim was procedurally barred on the basis of Rule 12.9.

In either event, the claim must be dismissed with prejudice.

With regard to his claim 1(b), improper use of medical exam to secure indictment, Petitioner points to no place where he in fact raised that claim on direct appeal. The undersigned finds none.

Accordingly, Grounds 1(a) and (b) are either procedurally defaulted or were procedurally barred on independent and adequate state grounds, and are subject to dismissal with prejudice.

### b)   Ground Two – Due Process re Medical Exam

In his Ground Two, Petitioner argues that his rights to due process were violated when the medical examination was used before the grand jury to secure an indictment, and before the trial jury to secure a conviction. (Amend. Pet. Doc, 5 at 7.)

Respondents argue this claim was never presented to the Arizona Court of Appeals on direct appeal or PCR review. (Answer, Doc. 13 at 20.) Petitioner argues (as with all his Grounds 1 through 4) that this claim was raised on direct appeal. (Reply, Doc. 28 at 2.)

To the extent that Ground Two relates to the use of the medical exam before the grand jury, it is repetitive of Ground 1(b), and like Ground 1(b) is procedurally defaulted.

To the extent that Ground Two relates to the use of the medical exam before the trial jury, Petitioner fails to point out where he raised this claim. His Supplemental Opening Brief makes no reference to the medical exam. (*See* Exhibit R, Supplemental Brief.)

Accordingly, Ground 2 was not fairly presented on direct appeal, and for the reasons discussed above, is now procedurally defaulted.

### c)   Ground Three – Prosecutorial Misconduct

In his Ground Three, Petitioner argues that the prosecutor engaged in misconduct by: (a) utilizing the medical examination; and (b) by threatening to press more serious

charges if Petitioner refused to accept a plea offer.   (Amend. Pet., Doc. 5 at 8.)
Respondents argue, as with Ground 2, that Ground 3(a) was never presented to the
Arizona Court of Appeals on direct appeal or PCR review.   (Answer, Doc. 13 at 20.)
Petitioner argues (as with all his Grounds 1 through 4) that this claim was raised on
direct appeal.  (Reply, Doc. 28 at 2.)

Petitioner did not assert his Ground 3(a) on direct appeal.

Petitioner did assert the facts underlying Ground 3(b) on direct appeal.
Respondents seem to have concluded that this claim was properly exhausted. However,
in presenting this claim, Petitioner made no reference to any law, and certainly no federal
law.  (Exhibit R, Supp. Brief at 6.)

Accordingly, Petitioner failed to fairly present his federal claims in both his
Ground 3(a) and 3(b).   For the reasons discussed hereinabove, Petitioner has now
procedurally defaulted his state remedies on those claims, and accordingly they must be
dismissed with prejudice.

### d)   Ground Four – Ineffective Assistance of Counsel

In his Ground Four, Petitioner argues that all of his counsel "pre and post trial":
(a) failed to review his case, (b) failed to raise claims he identified, and (c) appellate
counsel failed to find an issue for review.  (Amend. Pet., Doc. 5 at 9.)  In his Reply,
Petitioner clarifies that the issues not pursued were: (A) the medical records; (B) the
grand jury selection; (C) speedy trial; (D) disclosures to Petitioner; (E) appellate
counsel's failure to argue Petitioner's issues; and (F) PCR counsel's failure to
communicate with Petitioner. (Reply, Doc. 28 at 6.) Respondents argue, as with Ground
2, that this claim was never presented to the Arizona Court of Appeals on direct appeal
or PCR review.  (Answer, Doc. 13 at 20.)  Petitioner argues (as with all his Grounds 1
through 4) that this claim was raised on direct appeal.  (Reply, Doc. 28 at 2.)

On direct appeal, Petitioner argued that trial counsel was ineffective for failing:
(a) to challenge the grand jury panel; (b) to challenge the vindictiveness of the

prosecutor; and (c) to interview two witnesses.  (Exhibit R, Supp. Brief at 7.)  However, Petitioner made no reference to federal law in asserting his claims of ineffectiveness.[2]

Petition did assert a federal claim of ineffective assistance of trial counsel in his PCR petition for review.  However, that was based upon trial counsel's withdrawal of his opposition to the amendment of the indictment, and failure to file a motion to remand to the grand jury based on amendments to the indictment.  (Exhibit Z, Pet. Rev. at 14, 17.)  Those claims are not raised by Petitioner in this habeas petition.

Accordingly, Petitioner has not fairly presented to the Arizona Court of Appeals the federal claims of ineffective assistance that he raises herein.  For the reasons discussed hereinabove, he has now procedurally defaulted on those claims, and they therefore must be dismissed with prejudice.

### e)   **Summary Re Exhaustion**

Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted his state remedies on, or been procedurally barred on independent and adequate state grounds from asserting, his claims in Ground 1 through 4.

### 5.   **Cause and Prejudice**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119,

---

[2] Further, Petitioner failed to make any claim of ineffectiveness of appellate counsel, and made no reference to a failure by counsel to review his case, merely that the two specific challenges had not been raised, and the two witnesses had not been interviewed.  It might be tempting to presume that the claims not raised referenced in Ground 1(b) were just the grand jury and vindictiveness issues raised on direct appeal.  However The only claim in common with Petitioner's arguments on direct appeal were the failure to challenge the grand jury selection.

1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) his lack of knowledge of court procedures, and (2) counsel's lack of representation.

### a)  Pro Se Status

The "cause and prejudice" standard is equally applicable to *pro se* litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at 1381; illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking.  *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).  Accordingly, Petitioner's lack of knowledge of court procedures is not cause to excuse his procedural defaults or procedural bars.

### b)  Ineffective Assistance of Trial and Appellate Counsel

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*,

333 F.3d 938, 943 (9th Cir. 2003).

Here, Petitioner has not properly exhausted any claim of ineffective assistance regarding any claim on which he now seeks relief. Accordingly, he cannot rely on such ineffective assistance to avoid the effects of his procedural defaults.

### c)   Misconduct of PCR Counsel

Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation. *Id.* Accordingly, where no constitutional right to an attorney exists (e.g. in a PCR proceeding), ineffective assistance will not amount to cause excusing the state procedural default. *Id.* However, the Supreme Court has recently recognized two exceptions to this requirement, in *Maples* and *Martinez,* both of which deal with the ineffective assistance of PCR counsel as cause.

### (1).   Abandonment by PCR Counsel

In *Maples v. Thomas*, 132 S.Ct. 912 (2012), the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent (and under the law of agency, that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies. Here, however, Petitioner does not assert that PCR counsel abandoned him. At most, Petitioner claims PCR counsel failed to bring meritorious claims, and did not communicate with Petitioner for some period of time. Neither amounts to abandonment.

### (2).   Deficient Performance by PCR Counsel

#### (a).   *Standards Under Martinez*

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR

1  proceedings could effectively defeat any review of trial counsel's ineffectiveness.

2  Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman,*

3  *supra,* that the ineffectiveness of PCR counsel cannot provide cause.  Arizona, the state

4  at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR

5  counsel can establish cause to excuse a procedural default of a claim of ineffective

6  assistance of trial counsel.  In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth

7  Circuit extended *Martinez* to PCR counsel's ineffectiveness in failing to bring claims of

8  ineffective assistance of appellate counsel.

9       However, the *Martinez* court made clear that the limited exception it was creating

10 for ineffectiveness of PCR counsel as "cause" did not extend outside the initial PCR

11 proceeding.

12          The holding in this case does not concern attorney errors in other
           kinds of proceedings, including appeals from initial-review
13          collateral proceedings, second or successive collateral proceedings,
           and petitions for discretionary review in a State's appellate courts. It
14          does not extend to attorney errors in any proceeding beyond the first
           occasion the State allows a prisoner to raise a claim of ineffective
15          assistance at trial, even though that initial-review collateral
           proceeding may be deficient for other reasons.
16
*Martinez*, 132 S.Ct. at 1320.
17
18      The Ninth Circuit has observed that "there seems to be no requirement that the

19 claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-

20 sentencing-counsel claim be presented to the state courts."  *Dickens v. Ryan*, 740 F.3d

21 1302, 1322, n.17 (9th Cir. 2014).

22      For Petitioner to rely upon *Martinez*, Petitioner must "demonstrate[e] two things:

23 (1) 'counsel in the initial-review collateral proceeding, where the claim should have been

24 raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668,

25 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-

26 of-trial-counsel claim is a substantial one, which is to say that the prisoner must

27 demonstrate that the claim has some merit.'"  *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir.

28 2012) (quoting *Martinez*, 132 S.Ct. at 1318).

Thus, this Court must resolve whether, under *Martinez*, Petitioner's PCR counsel was ineffective so as to provide cause for Petitioner's failure to properly exhaust his claims concerning the ineffectiveness of trial and appellate counsel.[3]

**Standard for Ineffectiveness** - Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).   In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.   Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).    The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).    The reasonableness of counsel's actions is judged

---

[3]   In evaluating the ineffectiveness of PCR counsel (and as part thereof, the ineffectiveness of trial counsel), this habeas Court is not constrained by the limits on grants of habeas relief in 28 U.S.C. § 2254, *i.e.* state court decisions contrary to or unreasonable application of Supreme Court law, etc.. *Cf. Martinez*, 132 S.Ct. at 1320 (finding limits on habeas relief for ineffectiveness of PCR counsel not applicable to cause and prejudice determination).

from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**Relationship Between Martinez Prongs** - In many instances the two *Martinez* prongs are so intertwined that they will be subsumed into one analysis focused on one or the other prongs, *i.e.* trial counsel's performance or PCR counsel's performance.  There remains, however, a clear distinction between the prongs.  For example, there are gradations of the potential for success, and ultimate effect, of the foregone tactic.  Some underlying claims will be so attractive that trial counsel was clearly ineffective, and thus (barring inability to discover, or other impediments), PCR counsel was clearly ineffective in not raising it.  Others may be so clearly meritless that both trial and PCR counsel were obviously not ineffective in avoiding the claim.  And there may be still others, in the middle ground, that are substantial enough that (while perhaps not guaranteed of success) they require a determination whether PCR counsel had other tactical reasons to raise or not raise  the claim, *i.e.* the availability or absence of other, more attractive, claims, or was otherwise acting reasonably in forgoing the claim.

//

//

**(b).**  *Failures of Trial and Appellate Counsel*

In his Ground Four (ineffectiveness of counsel), Petitioner argues that all of his counsel "pre and post trial": (a) failed to review his case, (b) failed to raise claims he identified, and (c) appellate counsel failed to find an issue for review.  (Amend. Pet., Doc. 5 at 9.)  In his Reply, Petitioner clarifies that the issues not pursued were: (A) the medical records; (B) the grand jury selection; (C) speedy trial; and (D) disclosures to Petitioner.  (Reply, Doc. 28 at 6.)

Respondents properly argue that the claims as asserted in the Petition are speculative and conclusory, and establish neither deficient performance or prejudice.  (Answer, Doc. 13 at 34.)  "The district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  For this reason alone, Petitioner's claims of ineffective assistance of trial and appellate counsel are without merit, and consequently his claims of cause under *Martinez* are not sustained.

Nonetheless, even with the varnish of the Reply, Petitioner still fails to establish that his underlying claims of ineffective assistance of trial and appellate counsel are substantial.

**Medical Records** – With regard to the medical records, Petitioner complains that "pretrial counsels should have caught the medical reports." (Reply, Doc. 28 at 6.) However, Petitioner fails to explain what he means by asserting they should have "caught" the reports, or assuming they had, on what basis counsel could have opposed introduction of the medical reports.   Petitioner's arguments regarding the medical reports, as expressed in arguing Grounds 1 and 2, seem to be that: (1) the medical exam report did not show that the victim identified Petitioner as the perpetrator; and (2) they were prejudicial; and (3) the examining physician stated that the penetration had occurred two weeks before the examination, when Petitioner had left the home some 53 days before the examination.  (Reply, Doc. 28 at 3-4.)

Petitioner fails to show how the lack of identification of Petitioner as a perpetrator

1    would have been grounds to exclude the examination.  Evidence need not establish every

2    element of an offense to be admissible.

3            Petitioner fails to show that the medical examination was excludable as unduly

4    prejudicial.   Arizona Rule of Evidence 403 provides that relevant evidence may be

5    excluded "if its probative value is substantially outweighed by…unfair prejudice."

6    "Unfair prejudice results if the evidence has an undue tendency to suggest decision on an

7    improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545,

8    931 P.2d 1046, 1055 (1997).  Petitioner proffers no explanation what improper basis was

9    suggested by the medical reports.

10           Finally, Petitioner complains that the evidence from the report was that

11   penetration had occurred long after Petitioner left the residence.  Assuming that to be the

12   case, then arguably counsel would have been performing deficiently to exclude the

13   evidence, inasmuch as it would tend to exculpate Petitioner rather than inculpating him.

14   Accordingly, counsel had a reasonable tactical basis for declining to oppose the

15   introduction of the report.

16           **<u>Grand Jury Selection</u>** – Petitioner complains counsel should have challenged the

17   grand jury selection process.  He does not clarify the basis on which such challenge

18   should have been mounted.

19           In his Supplemental Brief on direct appeal, he argued that the grand jury selection

20   was improper because it was by zip code rather than county, with the result that 83% of

21   the jurors were from north Scottsdale.  In support of this argument to the Arizona Court

22   of Appeals, Petitioner cited Article 2 § 24 and Article 6 § 17 of the Arizona Constitution,

23   and Ariz. Rev. Stat. § 22-323, 21-312, 21-301 and 21-322.  However, Petitioner points to

24   no authority which requires that jury pools be drawn from the population of a county in

25   general.

26           Article 2, section 24 of the Arizona Constitution merely requires that trial be "by

27   an impartial jury of the county in which the offense is alleged to have been committed."

28   Article 6, section 17 directs that in Superior Court, a "trial jury shall be drawn and

summoned from the body of the county."  Petitioner does not explain what in these provisions would mandate use of a geographically representative draw from within the county, rather than just drawing a panel from a given portion of the county.

Arizona Revised Statutes sections 22-323 and 21-312,  while pertaining to juries, have no bearing on how the venire is drawn from which a jury is selected.  Section 21-301 does prescribe the production of a master jury list "of eligible persons who reside in the county," but does not prescribe the means for selecting a specific venire.  Now repealed section 21-322 specified some of the process for drawing a jury panel, but makes no reference to requiring a draw from the entire list of eligible persons from the county.

Even if it were assumed that Petitioner intended to assert an equal protection claim, Petitioner proffers nothing to show that the use of a venire from a particular zip code resulted in exclusion of a particular race or distinct class of veniremen. "[I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Castaneda v. Partida*, 430 U.S. 482, 494 (1977) (discussing equal protection concerns in grand jury selection in state prosecution).

In sum, Petitioner fails to show that the claim that trial and appellate counsel were deficient in failing to challenge the grand jury selection was a substantial claim.

**Speedy Trial** – Petitioner argues that counsel was ineffective for failing to assert a speedy trial objection.  He argues that "the courts violated my right to speedy trial by letting the prosecutor manipulate a plea offer on defective indictments."  (Reply, Doc. 28 at 6.)   Petitioner fails to explain how the plea proceedings and re-indictment resulted in a speedy trial violation, under either state or federal law.

Arizona Rule of Criminal Procedure 8.2(a) generally requires trial with 150 days from arraignment.  Rules 8.4 and 8.5 provide for exclusions and continuances. Unlike the federal Speedy Trial Act, the Arizona Rules do not explicitly address replacement

indictments.  *See* 18 U.S.C. § 3161(d).  Petitioner proffers nothing to show that the prior indictment was relevant to the calculation of a speedy trial deadline under Arizona law, or that after applying applicable exclusions and permitted extensions based on continuances, that his trial was after his Arizona speedy trial deadline.

The federal Speedy Trial Act does not apply to Petitioner's state conviction. Rather, his only federal speedy trial right arises under the Sixth Amendment as made applicable to the States under the Due Process Clause.  In reviewing a Sixth Amendment speedy trial clause violation, the court must consider four factors: (1) the length of the pretrial delay; (2) the reason for the delay; (3) whether the defendant asserted his speedy trial right; and (4) prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  "None of these factors are either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial." *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1985).  Petitioner fails to address any of these factors.

At best he suggests that the reason for the delay was based on some manipulation by the prosecution related to Petitioner's plea negotiations.  However, Petitioner fails to explain what that manipulation was.  To the extent that Petitioner intends to argue that it was the prosecution's threats to pursue more strident charges if the plea were rejected, Petitioner fails to show that such a threat was improper.  As noted by the Arizona Court of Appeals in rejecting Petitioner's direct appeal on this point, the prosecution's decision to seek charges is improper only if the charges brought were for "doing something that the law plainly allowed him to do."  (Exhibit S, Mem. Dec. 8/27/09 at 8, ¶17 (quoting *U.S. v. Goodwin*, 457 U.S. 368, 384 (1982)).  Indeed, the Court in *Goodwin* addressed a scenario that at least seems comparable to the facts of which Petitioner complains:

> An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Id.* at 380.

Petitioner fails to show a substantial claim that trial or appellate counsel performed deficiently in failing to pursue a speedy trial defense.

**Disclosures to Petitioner** – Petitioner complains that counsel never supplied various disclosures to Petitioner.  (Reply, Doc. 28 at 6.)  However, Petitioner fails to suggest how he was prejudiced by such non-disclosures.

Accordingly, Petitioner fails to show a substantial claim that trial counsel was ineffective in failing to provide disclosures, or that appellate counsel was performed deficiently in failing to pursue a claim based on the lack of such disclosures.

### d)     Summary re Cause and Prejudice

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 6.     Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual

39

innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway."  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner makes no assertion of new evidence of actual innocence, and fails to make a showing that no reasonable juror would have found him guilty.  Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

## D.   **MERITS OF CLAIMS**

Respondents proceed to address the merits of Grounds 3(b) and Ground 4. (Answer, Doc. 13 at 28 *et seq.*)  Because the undersigned finds these claims plainly subject to dismissal on exhaustion grounds, the undersigned does not separately address the merits of these claims.

## E.   **SUMMARY**

Petitioner's Ground Five and his proposed new ground in his proposed Second Amended Petition are untimely.  Petitioner's Ground 1 through 4 are either procedurally defaulted or were procedurally barred on independent and adequate state grounds, and Petitioner has failed to show cause and prejudice or actual innocence to excuse his failure to properly exhaust.  Accordingly, the existing Amended Petition must be dismissed, and the Motion to Stay/Motion to Amend should be denied with prejudice.

# IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation

as to the Petition, a certificate of appealability should be denied.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Stay/Motion to Amend, filed July 25, 2016 (Doc. 20) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus, filed January 7, 2016 (Doc.   5) be **DISMISSED WITH PREJDUICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.    EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

47 (9th Cir. 2007).

Dated: January 24, 2017

15-2229r RR 17 01 12 on HC.docx

James F. Metcalf
United States Magistrate Judge